No. 21–3268

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

THE ARC OF IOWA et al.,

Plaintiffs–Appellees,

vs.

KIM REYNOLDS, in her official capacity
as Governor of Iowa; ANN LEBO, in her official capacity
as Director of the Iowa Department of Education,

Defendants–Appellants,

ANKENY COMMUNITY SCHOOL DISTRICT et al.,

Defendants,

AMERICAN ACADEMY OF PEDIATRICS et al.,

Amici on Behalf of Appellees.

Appeal from the United States District Court
for the Southern District of Iowa

**PETITION FOR REHEARING EN BANC**

THOMAS J. MILLER
Attorney General of Iowa

JEFFREY S. THOMPSON
Solicitor General

SAMUEL P. LANGHOLZ
Assistant Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
sam.langholz@ag.iowa.gov
jeffrey.thompson@ag.iowa.gov

ATTORNEYS FOR APPELLANTS

## STATEMENT UNDER RULE 35(b)

Iowa Code section 280.31 sets education and public-health policy in Iowa by generally prohibiting schools from imposing mask mandates unless required by other law. A federal injunction has now prohibited the statute's enforcement for more than half the school year because the district court determined that federal disability law likely requires universal mask mandates as reasonable accommodations for Plaintiffs' children. The panel majority's opinion seemingly agreed, holding that the preliminary injunction should continue in—at least technically—narrowed scope to enjoin the statute's enforcement on only Plaintiffs' ten school districts.

The Court should rehear this case en banc. Whether section 504 of the Rehabilitation Act requires schools to impose universal mask mandates is a question of exceptional importance with far-reaching implications for schools in Iowa and throughout the nation. The panel majority's answer is not entirely clear. But Plaintiffs have already demanded that the eight Defendant school districts without universal mask mandates impose them because of the panel majority's opinion. *See* ACLU of Iowa, *Eight Iowa Schools Involved in Lawsuit Sent Legal Demand Letter*, https://perma.cc/YPK5-DP38. And they're asserting that the panel majority's opinion requires *any* school with a disabled student "more vulnerable" to COVID-19 to do the same. *Id.*

Plaintiffs' reading of the panel majority's opinion is not without support. Indeed, the panel majority held that "Plaintiffs are likely to succeed on the merits because mask requirements constitute a reasonable modification and schools' failure to provide this accommodation likely violates" section 504 of the Rehabilitation Act. Slip op. 18. Yet the majority's reasonable-accommodation analysis conflicts with the reasoning of the only other published opinion of a circuit court touching on this question, *E.T. v. Paxton*, 19 F.4th 760, 767–68 (5th Cir. 2021). And it's an improper expansion of federal disability law to unprecedented reach.

But even if Plaintiffs' interpretation isn't the intent of the panel majority, the confusion alone will cause chaos for schools—and others subject to federal disability laws—as they try to follow the law and defend against suit. These suits to force mask mandates were already gestating in the district courts before the panel opinion. If this case isn't reconsidered en banc, the federal courts will likely face managing an onslaught of litigation asking the courts to micromanage the appropriate public health precautions in schools with no end in sight.

The panel majority shouldn't have even reached this question because Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"). The majority's conclusion that exhaustion isn't required here—even

while agreeing that "this action could have been brought under the IDEA," Slip op. 27 (Erickson, J., dissenting)—creates a circuit split with the Fifth Circuit, the only other circuit to consider the applicability of exhaustion to school mask-mandate claims. *See E.T.*, 19 F.4th at 766–67. And it's in tension—if not direct conflict—with the Supreme Court's decision in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), and this Court's decisions in *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 948–49 (8th Cir. 2017), and *Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 592 (8th Cir. 2018).

The panel majority's opinion will erode the IDEA exhaustion requirement, further opening the doors to all manner of premature disability suits against schools. Considering this second exceptionally important question en banc will ensure that the Eighth Circuit continues to uniformly enforce the requirement. And it will properly route this case—and others like it—to the schools and IDEA dispute-resolution processes. This proper administrative process will best provide individualized, fact-specific decisions about how to reasonably accommodate Plaintiffs' children's educational needs during this continually evolving pandemic.

This case warrants en banc review.

# TABLE OF CONTENTS

STATEMENT UNDER RULE 35(b) .............................................. 2

BACKGROUND ............................................................. 6

ARGUMENT ................................................................ 10

I.   In conflict with the Fifth Circuit—and at least tension with precedent of the Supreme Court and this Court—the panel majority wrongly decided that Plaintiffs were not required to exhaust their administrative remedies under the IDEA... 10

II.  The panel majority's premature interpretation of section 504 of the Rehabilitation Act threatens to enmesh the federal courts in state education and public-health policy by wrongly holding that federal disability law likely requires schools to impose mask mandates. ........................................ 13

CONCLUSION ............................................................. 19

CERTIFICATE OF COMPLIANCE .............................................. 21

CERTIFICATE OF SERVICE ................................................. 21

## BACKGROUND

Near the end of last school year, the State of Iowa enacted Iowa Code section 280.31. *See* Act of May 20, 2021 (H.F. 847), ch. 139, 2021 Iowa Acts § 28 (codified at Iowa Code § 280.31 (2022)), *available at* https://perma.cc/XM6Q-A3HX. The statute became effective immediately, *see id.* § 31, and provides:

> The board of directors of a school district, the superintendent or chief administering officer of a school or school district, and the authorities in charge of each accredited nonpublic school shall not adopt, enforce, or implement a policy that requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's or accredited nonpublic school's property unless the facial covering is necessary for a specific extracurricular or instructional purpose, or is required by section 280.10 or 280.11 or any other provision of law.

*Id.* § 28. It generally prohibits Iowa schools from mandating that anyone wear masks on their property. *Id.* But schools may mandate masking if it "is required by . . . any other provision of law." *Id.*

Plaintiffs are eleven parents of children in Iowa public school districts and one nonprofit organization. All the children have intellectual or physical disabilities that increase their risk associated with contracting COVID-19. And Plaintiffs believe that "[i]f everyone were wearing a mask," these harms would be avoided and "their children would be safe." App. 155. They all have expressed their desire to "block" section 280.31 so that their schools could impose

— 6 —

"universal masking." *See* App. 91 ¶ 16; App. 93 ¶ 14; App. 96 ¶ 15; App. 98 ¶ 18; App 102 ¶ 22; App. 105 ¶ 14; App. 107 ¶ 15; App. 112 ¶ 17; App. 115 ¶ 24; App. 118 ¶ 12; App 120 ¶ 17.

As the current school year approached, some Plaintiffs sought modifications from their schools. For example, one parent sought an accommodation that her son's teacher mask when she was working one-on-one with him. App. 118 ¶ 9. But after a week of school, her son told her that his teacher wasn't doing so. App. 118. ¶ 10; *see also* App. 115 ¶ 18 (requesting that teacher mask and permit student to leave class early to avoid crowded halls); App. 95 ¶ 10 (requesting small groups working with child voluntarily mask); App. 110 ¶ 10 (requesting voluntary masking around child, a smaller classroom, and social distancing). Yet there's no evidence that any parent took any steps to try to enforce the agreed measures or seek additional help through any of the remedies available. *See* App. 95, 110, 115, 118.

Instead, more than three months after section 280.31 was enacted, Plaintiffs sued Governor Reynolds, Iowa Department of Education Director Ann Lebo, and ten school districts, alleging that section 280.31 violates title II of the Americans with Disabilities Act ("ADA"), section 504 of the Rehabilitation Act, and the American Rescue Plan Act of 2021. *See* App 38–44 ¶¶ 76–102. They sought a temporary restraining order and preliminary injunction

enjoining enforcement of section 280.31 so that local schools could impose universal mask mandates. App. 44.

Over the objection of Governor Reynolds and Director Lebo (collectively, "the State"), the district court entered an indefinite temporary restraining order on September 13, 2021. It enjoined all Defendants "from enforcing Iowa Code section 280.31 banning local public school districts from utilizing their discretion to mandate masks for students, staff, teachers, and visitors." Add. 56. The court extended the temporary restraining order once, Add. 63–64, and then finally issued a preliminary injunction twenty-five days after first enjoining the statute. Add. 27.

The district court based the injunction on Plaintiffs' likelihood of success on their claims under title II of ADA and section 504 of the Rehabilitation Act. Add. 20. It reasoned that "section 280.31 seems to conflict with the ADA and section 504 of the Rehabilitation Act because it excludes disabled children from participating in and denies them the benefits of public schools' programs, services, and activities to which they are entitled." Add. 20. According to the court, this was because the lack of universal mask mandates made "in person learning at schools available only under conditions that are dangerous to children with disabilities." Add. 15, 53.

The State immediately appealed the preliminary injunction and moved to expedite the appeal. This Court agreed, ordering

expedited briefing and setting oral argument for November 2021. Two months after oral argument, a panel of this Court issued a split decision. The panel majority vacated the preliminary injunction as "sweep[ing] broader than the relief necessary to remedy Plaintiffs' injuries." Slip op. 25. But it held that Plaintiffs were entitled to a narrower injunction applying only to prohibit enforcement of section 280.31 on "their schools and districts." *Id.*

The panel majority reasoned that Plaintiffs weren't required to exhaust their administrative remedies because their suit doesn't challenge the denial of a free appropriate public education—only their access to school buildings. *See* Slip op. 14–17. It thus reached the merits, holding that "Plaintiffs are likely to succeed . . . because mask requirements constitute a reasonable modification and schools' failure to provide this accommodation likely violates" section 504 of the Rehabilitation Act. Slip op. 18.

Judge Erickson dissented. He concluded that Plaintiffs "should not be permitted to circumvent the exhaustion requirement of the IDEA." Slip op. 27 (Erickson, J., dissenting). And he disagreed with the "premature finding that plaintiffs are entitled to a preliminary injunction" that "broadens" federal disability law and "fails to give appropriate weight" to Iowa's enacted statutes. *Id.*

## ARGUMENT

**I.** **In conflict with the Fifth Circuit—and at least tension with precedent of the Supreme Court and this Court— the panel majority wrongly decided that Plaintiffs were not required to exhaust their administrative remedies under the IDEA.**

When plaintiffs sue under title II of the ADA or section 504 of the Rehabilitation Act, they must exhaust the administrative remedies provided by the Individuals with Disabilities Education Act ("IDEA") if they are "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*); *see also Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 750 (2017). This "exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education" ("FAPE"). *Fry*, 137 S. Ct. at 754. If the suit claims discrimination in a way that doesn't result in denial of a FAPE, then exhaustion isn't required "because, once again, the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE. *Id.* at 755. In conducting this analysis, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.*

Here, the panel "majority noted this action could have been brought under the IDEA." Slip op. 27 (Erickson, J., dissenting); *see also id.* at 15 (majority opinion) (noting that "suit could have been brought under the IDEA because Plaintiffs may not be able to 're-ceive instruction' at their schools"). This recognition should have

been the beginning and the end of the analysis under the text of 20 U.S.C. § 1415(*l*) and *Fry*. Particularly so, when Plaintiffs' "complaint is rife with" claims that "the lack of mask mandate in schools precludes or 'effectively exclude[s]' their children from the public education system" and challenges "the adequacy of alternatives to in-person education" for their children. Slip op. 26 (Erickson, J., dissenting).

Instead, the panel majority reasoned that Plaintiffs' claims seeking to require mask mandates in their schools are like claims for wheelchair ramps that give them access to their schools. And the panel majority thus answered "yes" to *Fry*'s two hypothetical questions—concluding that Plaintiffs could have brought this claim against another public facility and that a teacher or visitor could make the same claim against the school. Slip op. 14–15.

But in doing so, the majority disregarded this Court's prior guidance that it's improper to approach these questions at a "higher level of generality" *Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 592 (8th Cir. 2018); *see also Fry*, 137 S. Ct. at 759 (Alito, J., concurring) (explaining that the hypotheticals are "false clues" that "are likely to confuse and lead courts astray" given the overlapping coverage of the statutes). "The claims in this case are narrow and do not easily transcend into other areas of the children's lives as is suggested by the majority." Slip op. 26 (Erickson, J., dissenting).

Like the panel dissent, the Fifth Circuit properly rejected the analogy that this sort of suit is merely seeking "physical access." *E.T. v. Paxton*, 19 F.4th 760, 767 (5th Cir. 2021). That court explained, "the plaintiffs at base allege something very particular: the deprivation of an in-person state-sponsored education because of their risk of contracting COVID-19 without a mask mandate." *Id*. The Court thus concluded that the answer to both *Fry* questions was no—and exhaustion was likely required. *See id*.

The panel majority also relied on the fact that one of Plaintiffs doesn't have an individualized education plan ("IEP"). Slip op. 15. But this contradicts the Court's decision in *Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587 (8th Cir. 2018), which rejected any requirement that a plaintiff must have invoked IDEA's remedies by obtaining an IEP. *See id*. at 592–93. Plaintiffs have never argued that they wouldn't qualify for relief under the IDEA. And even if students hadn't previously done so—it's not that extraordinary to expect that they should seek an IEP in the midst of a pandemic that they claim is destroying their education before rushing to court to enjoin a State statute.

Nor would exhaustion be futile here. The panel majority held otherwise because an agency administrative law judge "cannot decide issues of statutory validity." Slip op. 17 n.2 (quoting *Tindal v. Norman*, 427 N.W.2d 871, 873 (Iowa 1988)). But no such issue

— 12 —

would be present in deciding whether Plaintiffs were receiving a FAPE, since—as the panel majority agreed—section 280.31 allows compliance with federal disability law. *Id.* at 21. And if Plaintiffs were dissatisfied with the ultimate resolution of that process, *then* they could seek judicial review with a robust record.

Plaintiffs' complaint is explicitly tied to a deprivation of their educational needs. They contend that they're deprived their education because they're not able to safely attend in-person school without a mask mandate and the alternative of virtual school is inadequate. App. 26–27 ¶¶ 56–59. Plaintiffs' claimed discrimination is thus an injury that is allegedly denying them a FAPE. That injury could be remedied by granting relief under the IDEA. Exhaustion was thus required. Vacating the panel open and correctly answering this exceptionally important question would avoid opening the door to a tremendous wave of litigation over masking in schools.

II. **The panel majority's premature interpretation of section 504 of the Rehabilitation Act threatens to enmesh the federal courts in state education and public-health policy by wrongly holding that federal disability law likely requires schools to impose mask mandates.**

The panel majority's opinion held that "Plaintiffs are likely to succeed on the merits because mask requirements constitute a reasonable modification and schools' failure to provide this accommodation likely violates" section 504 of the Rehabilitation Act. Slip op.

18. The majority never explains precisely how broadly this new-found requirement sweeps. It describes Plaintiffs' requested accommodation to be "that schools require *some* others wear masks." *Id.* at 19 (emphasis added). And the majority rejects the State's characterization of their request as a "universal mask mandate." *Id.* at 23. But that rejection appears to be mainly based on Plaintiffs' openness to tailoring exceptions to the mandate for themselves and other disabled students, rather than a suggestion the mandate would not otherwise generally apply to all others. *See id.* at 11, 23.[1]

Indeed, the accommodation that Plaintiffs repeatedly claim they want from their districts is "universal masking," or in other words a district-wide, universal mask mandate. *See* App. 11, 20–21, 25, 27–39, 43, App. 91 ¶ 16; App. 93 ¶ 14; App. 96 ¶ 15; App. 98 ¶ 18; App 102 ¶ 22; App. 105 ¶ 14; App. 107 ¶ 15; App. 112 ¶ 17; App. 115 ¶ 24; App. 118 ¶ 12; App 120 ¶ 17. The majority opinion

---

[1] In its briefing, the State has used the term "universal," just as Plaintiffs do throughout their Complaint, *see, e.g.*, App. 28–29 ¶¶ 60, 62(j), to describe their desired mask mandate as one that generally applies to all others in the school district. This is to distinguish from the more generic term "mask mandate," which applies to any required masking and could be limited to just a teacher or other person closely interacting with a disabled student. By using Plaintiffs' chosen adjective, the State doesn't contend that Plaintiffs seek a mandate with no exception for disabled students who cannot mask.

repeatedly says that "Plaintiffs' requested accommodation is reasonable." Slip op. 20; *see also id.* at 19, 24. It relies on the benefits of "universal indoor masking for all students, staff, teachers, and visitors" in weighing the public interests of the injunction. *Id.* at 23. And the only context it highlights as proper enforcement of section 280.31 is "against schools that encounter no one with disabilities that require masks as a reasonable accommodation." *Id.* at 25.

Perhaps it's not a surprise then that Plaintiffs now contend that the panel majority opinion holds that universal mandates are required by section 504 if the school encounters any disabled student vulnerable to COVID-19. *See* ACLU of Iowa, *Eight Iowa Schools Involved in Lawsuit Sent Legal Demand Letter*, https://perma.cc/YPK5-DP38. In fact, they have already demanded that the eight Defendant school districts without universal mask mandates must impose them because of the panel majority's opinion. *See id.*

The majority opinion's interpretation of section 504 is an unprecedented and far-reaching expansion of federal law. Until the collection of cross-citing district court decisions in similar mask cases this fall, no court has *ever* suggested that a school or any other public accommodation or employer would need to require universal masking of all people on its premises or risk discriminating against medically fragile disabled individuals. Yet that appears to be what

the majority holds here—the first time a circuit court has done so in a published opinion.[2]

But as recognized by the Fifth Circuit, the majority's conclusion that universal mask mandates are a reasonable accommodation "rests on the faulty premise that the *only* accommodation available to plaintiffs is their schools' ability to impose mask mandates." *E.T.*, 19 F.4th at 768. It overlooks the "availability of vaccines, voluntary masking, and other possible accommodations" *Id.* After all, Plaintiffs "are not entitled to their preferred accommodation, but only a reasonable" one. *Id.* at 767.

The majority's conclusion also ignored this Court's precedent that no violation of section 504 or the ADA occurs when a denial of benefits arises from a neutral nondiscriminatory policy—like Iowa's general prohibition on school mask mandates—rather than because of a plaintiff's disability, no violation arises. *See Davis v. Francis Howell Sch. Dist.*, 138 F.3d 754, 756–57 (8th Cir. 1998). It matters not whether the plaintiffs "question the wisdom" of the policy. *Id.* at 756. The policy doesn't violate the federal statutes where it

---

[2] In two unpublished orders, the same Sixth Circuit panel denied stays of preliminary injunctions pending appeal based on universal masking being a reasonable accommodation, at least under the highly deferential standard of review for stays. *See G.S. v. Lee*, No. 21-5915, 2021 WL 5411218 (6th Cir. Nov. 19, 2021); *M.B. v. Lee*, No. 21-6007, 2021 WL 6101486 (6th Cir. Dec. 20, 2021).

"applies to all students regardless of disability and rests on concerns unrelated to disabilities or misperceptions about them." *Id.* (cleaned up); *see also Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971–72 (8th Cir. 1999); *DeBord v. Bd. of Educ.*, 126 F.3d 1102, 1105–06 (8th Cir. 1997).

And here, Iowa's neutral policy is enacted in statute. Limiting enforcement of this statute with a swollen interpretation of section 504 "fails to give appropriate weight to the requirement that 'governmental policies implemented through legislation and developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" Slip op. 27 (Erickson, J., dissenting) (quoting *Libertarian Party of Ark. v. Thurston*, 962 F.3d 390, 399 (8th Cir. 2020)); *see also New Motor Vehicle Bd. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

In considering the scope of section 504, the panel majority also glosses over the unprecedented and substantial infringement of on private third parties' rights that flows from requiring universal masking. The panel compares it to an accommodation of banning employees from using nail polish. *See* Slip op. 20. That might be a

fair comparison to requiring teachers to mask around disabled students. But an employer's imposition on employees, who are voluntarily working and paid to abide their employers' directives, is significantly different than imposing a requirement on students who have a right to receive a free public education and are compelled to attend some school.

What is the limiting principle for the reasonableness of an accommodation, if a single disabled student can sue and require nearly everyone in her school district to wear masks to protect her health? Could she also sue to mandate that they all become vaccinated for COVID-19? It's difficult to see why not under the majority's logic. In fact, the majority even relies on Iowa's general compulsory school immunization statute to support the reasonableness of Plaintiffs' requested accommodation. *See* Slip op. 20. But while a State can of course exercise its police powers to enact such a statute, it doesn't follow that federal disability law could permit a private plaintiff to force such an intrusion on third parties in the name of reasonable accommodation.

Even if some courts ultimately interpret the holding and reasoning of the panel majority more narrowly, it will still cause an onslaught of litigation for schools and other facilities subject to section 504 or the ADA. With no clear guideposts, it'll be difficult to follow the law and defend against suits. And courts will become

enmeshed managing in state public health and education policy as the pandemic continues to evolve.

But the ADA and section 504 do not authorize federal courts to be de facto super-public-health-and-education directors—anymore than Title IX authorizes it to sit as a "*de facto* super-athletic department director." *Portz v. St. Cloud State Univ.*, 16 F.4th 577, 584 (8th Cir. 2021). This Court should not approve of this expansion of federal law, particularly where it would brush up against questions "fraught with medical and scientific uncertainties" and subject the States "to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief). The panel majority opinion and the district court's injunction should not stand.

## CONCLUSION

The panel majority's expansive and unclear interpretation of section 504 and refusal to enforce the IDEA's exhaustion requirement threaten to unleash a wave of suits against schools. This injunction—and others like it—will undermine the efforts of elected officials to appropriately set education and public health policy in this evolving pandemic. The Court should rehear this case en banc.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa

JEFFREY S. THOMPSON
Solicitor General

*/s/ Samuel P. Langholz*
SAMUEL P. LANGHOLZ
Assistant Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
sam.langholz@ag.iowa.gov
jeffrey.thompson@ag.iowa.gov

ATTORNEYS FOR
APPELLANTS

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this document contains 3,899 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f). It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Samuel P. Langholz*
Assistant Solicitor General

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 8, 2022, this petition was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Samuel P. Langholz*
Assistant Solicitor General